***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications, therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on the date of injury.
3. The carrier on the risk is Builders Mutual Insurance Company.
4. The date of injury is January 8, 2002.
5. The nature of the injury is left foot calcaneal fracture.
6. The injury is directly and causally related to the plaintiff's fall occurring on January 8, 2002.
7. The average weekly wage is $560.00, yielding a compensation rate of $373.35.
8. The defendant-employer does not presently employ plaintiff. In addition, the parties stipulated into evidence the following:
(a) Packet of medical records and reports.
(b) Defendants' answers to plaintiff's interrogatories.
(c) Laboratory data package regarding chain of custody.
(d) Videotape.
(e) Report by private investigators.
Although the parties indicated that they would be submitting a packet of Industrial Commission forms by stipulation, the forms were not submitted.
The Pre-Trial Agreement dated September 18, 2002, which was submitted by the parties, is incorporated by reference.
9. The depositions of Dr. Shayne Gad and Dr. Andrew P. Mason are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-five years old and a high school graduate. Plaintiff was employed by defendant-employer on January 8, 2002 as a carpenter, and had been so employed for approximately 9 months. His job involved setting up scaffolding, cutting exterior trim and nailing it onto houses. The scaffolding used by the crew consisted of two ladders which had L-shaped ladder jacks hooked to them at the same height and then a two by eight foot board which was placed across the ladder jacks. The board would support a person as long as he was standing on it at some point between the ladder jacks. However, the board could not support a person's weight on the outside of the ladder jack; it would pop up on the opposite end.
2. On January 8, 2002 plaintiff began working at 7:00 a.m. His first task was to set up the scaffolding which he would be using that day. He then climbed onto the scaffolding and began to use a nail gun to attach pieces of trim to the house where the crew was working. His supervisor, Bobby Faircloth, worked on the ground sawing the blocks and molding which plaintiff was nailing to the house. Sometime between 8:15 and 9:00 that morning, Mr. Faircloth saw plaintiff step on the scaffolding board on the outside of the ladder jack. As would be expected, the other end of the board went up in the air and plaintiff began to fall. He jumped away as best he could and landed on his feet in icy mud. After sliding a short distance, he went to his knees and then could not get up without assistance due to pain in his left foot.
3. Mr. Faircloth called Thomas Johnson, the employer, and then had his father take plaintiff to Lake Norman Urgent Care. There was also a medical report from Piedmont HealthCare for an evaluation that morning. X-rays were taken of plaintiff's foot which revealed a fracture of the main body of the calcaneus. Consequently, he was referred to Dr. Dunaway, an orthopedic surgeon, who also examined him that day. The doctor placed him in a splint and ordered a CT scan of his foot. The test revealed a comminuted displaced intra-articular fracture which would require surgery. However, surgery could not be performed until the swelling in plaintiff's foot went down. Consequently, he was casted for a period of time. Then on January 25, 2002 Dr. Dunaway operated to reduce and fixate the fracture with hardware.
4. Plaintiff's condition slowly improved thereafter but he was not allowed to walk on the foot until April 2, 2002 when x-rays showed that sufficient healing of the bone had occurred. He still had to wear a fracture boot at that time. By June of 2002, his condition improved to the point that Dr. Dunaway released him to return to work. Defendant-employer had fired him, however, so he had to find other work. He subsequently reported problems with standing for more than five hours, so in July Dr. Dunaway placed temporary restrictions on him. However, he ultimately recovered well from his injury.
5. Plaintiff clearly sustained an injury by accident arising out of and in course of his employment on January 8, 2002. The fact that he fell twelve feet from a scaffold constituted an unusual occurrence which interrupted his regular work routine. Defendants denied liability of the claim on the basis of a drug test which was taken at the clinic at 11:40 on the morning of the injury. The test revealed that plaintiff had used cocaine. As of 11:40 a.m. on January 8, 2002, he had 790 nanograms per milliliter of the metabolite of cocaine, Benzoylecgonine, in his urine. Cocaine is a controlled substance.
6. When confronted with the positive drug test, plaintiff indicated that he only used cocaine once in his life, and that the one occurrence was the Friday before the Tuesday when he was hurt. He further testified that it had been so long since he had used the drug that he was no long under the influence of it on the morning he fell. Based upon the four and one-half hour half-life of the metabolite, plaintiff would have had to have taken well more than a lethal dose of cocaine on Friday night in order to still have so much of the substance in his urine on Tuesday morning.
7. The credible expert testimony of Dr. Gad showed that a person who used a typical "dose" of cocaine would be expected to have three hundred to four hundred ng/ml of the metabolite in his urine afterwards. Since plaintiff was not observed to have used the drug once he arrived at work, at least one half-life of the metabolite had expired by 11:40 when the drug test was taken. Consequently, he would have had approximately 1600 ng/ml of the metabolite of cocaine in his urine when he started work that morning. Although he would not have had enough cocaine in his system at that level to noticeably impair his motor skills, his judgment would have been impaired. Dr. Gad indicated that the level of the metabolite was consistent with drug use immediately prior to reporting for work.
8. A carpenter with plaintiff's experience would know not to step beyond the ladder jack when working on a scaffold twelve feet above the ground. The fact that he failed to do so on January 8, 2002 was due to impairment of his judgment from the use of cocaine before he started work that morning.
9. The injury plaintiff sustained on January 8, 2002 was a proximate result of his being under the influence of a controlled substance.
10. N.C. Gen. Stat. § 97-12 provides that: "[n]o compensation shall be payable if the injury or death to the employee was proximately caused by:
 His intoxication, provided the intoxicant was not supplied by the employer or his agent in a supervisory capacity to the employee; or
 His being under the influence of any controlled substance listed in the North Carolina Controlled Substances Act, G.S. 90-86 et seq., where such controlled substance was not by prescription by a practitioner."
11. "G.S. 97-12 is an integral part of our Workers' Compensation Act and evidences the Legislature's intention to relieve an employer of the obligation to pay compensation to an employee when the accident giving rise to the employee's injuries is proximately caused by his intoxication." Anderson v. Century Data Systems, Inc., 71 N.C. App. 540,547, 322 S.E.2d 638, 642 (1984). An employer is not required to show that intoxication is the sole proximate cause, only that the impairment was a proximate cause of the accident. Anderson, 71 N.C. App. At 545,322 S.E.2d at 641.
12. The State of North Carolina has enacted numerous laws and regulations emphasizing the strong public policy against the use of controlled substances, including cocaine, particularly while at work. To award benefits to plaintiff, who was under the influence of cocaine while at work, would send the message that intoxication at work will be tolerated in the State of North Carolina. The Industrial Commission has a duty to strongly uphold public policy.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On January 8, 2002 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was under the influence of cocaine, a controlled substance, at the time of the accident. His injury was a proximate result of his being under the influence of the drug. N.C. Gen. Stat. § 97-12;Anderson v. Northwestern Motor Company, 233 N.C. 372, 64 S.E.2d 265
(1951).
3. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his injury. N.C. Gen. Stat. § 97-12.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of ___ 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER